## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ANTONIOS DALEZIOS,**                              Chapter 7
    Debtor                              Case No. 10-18158-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion to Reopen filed by Antonios Dalezios (the "Debtor") pursuant to which he seeks to reopen his case for the purposes of listing Elizabeth and Harrison Kelton (collectively, the "Keltons" or the "Creditors") as creditors and obtaining a determination that any debt he owes them is dischargeable. The Creditors opposed the Motion. The Court heard the matter on January 28, 2014 and directed the parties to file supplemental memoranda.

The Debtor filed a supplemental memorandum. The Creditors, however, filed a "Conditional Assent to Motion to Reopen," in which they stated that they had advised the Debtor that they had not sought, and were not going to seek, to except their claim from discharge. In addition, they indicated that they wished to obtain recovery from the Residential Contractor's Guaranty Fund (the "Fund"), established pursuant to Mass. Gen. Laws ch. 142A, § 5.

The material facts necessary to resolve the Motion to Reopen, except where noted below, are not in dispute, and neither the Debtor nor the Creditors requested an evidentiary

1

hearing.  The Court now makes the following findings of fact and rulings of law.

## II. FACTS

The Debtor filed a voluntary Chapter 7 petition on July 29, 2010.  He did not list the Keltons on his schedules of liabilities.  The Court entered the discharge order on November 2, 2010.  Approximately two months later, the Chapter 7 Trustee filed a Report of No Distribution.  On February 24, 2011, the Debtor's case was closed.

On December 20, 2013, the Debtor filed his Motion to Reopen.  He attached to his Motion a copy of a complaint filed by the Keltons, on or about June 25, 2013, in the Massachusetts Superior Court, Department of the Trial Court, a copy of a home improvement contract from "Antony's Services" for a remodeling job at the Keltons' residence in the sum of $33,000, and a copy of a Memorandum of Decision and Order, dated December 2, 2013, issued by the Superior Court. *See* Kelton v. Anthony's Handyman Servs., No. 13-2636, Slip op. (Dec. 2, 2013).[1]

The Creditors objected to the Motion to Reopen referencing the Superior Court action, as well as a previously filed  complaint against the Debtor in the Newton District Court in February of 2013, which they voluntarily dismissed.  The Debtor maintained that the complaint was dismissed because the damages claimed by the Keltons exceeded the jurisdictional limits of district courts, *see* Mass. Gen. Laws ch. 218, § 19.  The Creditors, however, maintained that they dismissed the action after learning of the Debtor's bankruptcy

---

[1] It appears that the Debtor, who disclosed his occupation as a self-employed handyman on Schedule I-Current Income of Individual Debtor(s), utilized a number of trade names.  He did not indicate that he did business as either Antony's Services or Anthony's Handyman Services on his petition.

2

discharge and that they advised him to file a motion to reopen at that time.  They stated:

> It would be inequitable to allow the Debtor to reopen the case now when the Debtor was told to reopen or the Keltons would refile suit.  The Debtor not only refused to do so, but after the complaint was filed, he filed a baseless motion to dismiss based on the bankruptcy discharge thereby forcing the Keltons unnecessarily to spend thousands of dollars.

Further arguing that the Debtor was aware of their claims when he filed bankruptcy in 2008 and raising the doctrine of laches due to the delay and expense occasioned by the Debtor's failure to move to reopen his bankruptcy case until after the Superior Court case was filed, the Creditors added:  "[r]eopening is for the debtor who honestly forgot a creditor, not a tactical move when all else fails."

The Superior Court in its decision addressed the Newton District Court complaint filed by the Keltons and the Debtor's failure to move to reopen his bankruptcy case in early 2013.

The Superior Court stated:

> Plaintiffs voluntarily withdrew the District Court complaint without prejudice while counsel investigated the issue of whether the bankruptcy discharge barred the claim.  At the conclusion of that investigation, Plaintiffs notified Defendants that they intended to re-file in Superior Court unless Defendants asked the Bankruptcy Court to reopen the bankruptcy and discharge Plaintiffs' claim.  Defendants did not respond, and Plaintiffs then filed this lawsuit."

Kelton v. Anthony's Handyman Servs., No. 13-2636, Slip op. at 5 (Dec. 2, 2013).

In their Superior Court complaint, the Keltons set forth two counts, one under Mass. Gen. Laws ch. 142A, § 17, which sets forth 17 prohibited acts by contractors and subcontractors, and one for breach of contract. They sought damages in excess of $30,000.  The Debtor moved to dismiss the complaint based upon his bankruptcy discharge.  The Superior Court's Memorandum of Decision concerned the merits of the motion to dismiss.

3

After setting forth the facts and the standard for dismissal under Mass. R. Civ. P. 12(b)(6), the

Superior Court stated:

> Defendants contend that Plaintiffs' claims are barred because of Dalezios's bankruptcy discharge in November 2010. Plaintiffs argue that their claims are not discharged because Dalezios did not inform the Bankruptcy Court of Plaintiffs' claim, and Plaintiffs did not have notice or actual knowledge of the bankruptcy proceedings. Generally, a debt is not discharged if the debtor did not list the creditor's claim, and the creditor was not notified of the opportunity to participate in the bankruptcy proceeding. *Colonial Sur. Co. v. Weizman*, 564 F.3d 526, 530 (1st Cir. 2009).
>
> In *Colonial*, the First Circuit held that unlisted debts are not discharged in Chapter 7 no asset bankruptcies. *Id.* at 531-532. In so doing, the First Circuit expressly rejected the "no harm, no foul" approach to no asset bankruptcies taken by certain other Circuit Courts of Appeal. Under that view, a creditor whose debt was not listed in a no asset bankruptcy suffers no prejudice, because that debt would have been discharged had it been properly listed. In disagreeing with this approach, the First Circuit expressly declined to follow, among other cases, the only case on which Defendants here rely, *In re Madaj* 149 F.3d 467 (6th Cir. 1998). *Colonial*, 564 F.3d at 532 n.5. I adopt the position of the First Circuit, and therefore find that Plaintiffs' unlisted claims were not discharged in bankruptcy, and are not barred.

Slip op. at 3. The Superior Court then considered the nature of the Keltons' claims for breach

of contract, including allegations of defective and shoddy work, concluding those claims

sounded in tort, not contract, and were barred by the applicable statute of limitations. The

court also determined that the Keltons' claims under Mass. Gen. Laws ch. 142A, § 17, and

Mass. Gen. Laws ch. 93A, sounded in tort and were barred by the applicable statute of

limitations. With respect to claims that the Debtor only completed half of the work, but

received excess compensation, the Superior Court concluded that those were contract claims

that were not barred by the applicable statute of limitations and would be allowed to proceed.

As noted, the Debtor raised his bankruptcy discharge as a defense in support of

4

dismissal of the Keltons' complaint in the Superior Court. He was partially successful in having some of the Keltons' claims dismissed, but not on the ground he asserted. He now turns to this Court, seeking to reopen his case to obtain a determination that the contract claims advanced by the Keltons, which survived as a result of the Superior Court's application of Colonial Sur. Co. v. Weizman, 564 F.3d at 532, and its statute of limitations analysis, should be discharged by order of this Court upon reopening of his case. He asserts that the omission of the Creditors' claim was innocent and that there would be no prejudice to the Creditors, citing Colonial Sur. Co. v. Weizman, 564 F.3d at 532. The Debtor also argues that he did not wait an unreasonable amount of time to seek to reopen his bankruptcy case. Aware that the Keltons seek to obtain reimbursement from the Fund, the Debtor responded that a prerequisite to reimbursement is a judgment against the contractor for a violation of Mass. Gen. Laws ch. 142A. The Debtor stated: "[i]n this case, it is impossible for the Creditors to obtain a judgment against the Debtor for violating 142A [sic] due to the fact that the Superior Court already dismissed all tort claims, and specifically the c. 142A claims made by the creditors."[2] The Creditors, however, asserted in their Objection to the Motion to Reopen that

---

[2] The Residential Contractor's Guaranty Fund is intended "to compensate owners for actual losses incurred by them as a result of registered contractor or subcontractor conduct" which a court has found to be "work performed in a poor or an unworkmanlike manner or which is a common law violation or a violation of any statute or regulation designed for the protection of consumers." Mass Gen. Laws ch. 142A, § 5. In order to collect from the Fund, a homeowner must demonstrate that he has exhausted all customary and reasonable efforts to collect the judgment, and has found that the contractor has filed for bankruptcy, fled the jurisdiction, or the homeowner is otherwise unable to collect the judgment. Id. According to 57 Joel Lewin and Charles E. Schaub, Jr., Mass. Practice, Construction Law, § 5:23 (2102),

[A] homeowner "may make a claim to the guaranty fund only if he or she

5

the Debtor had "ample notice of their potential claim as he was terminated in a heated discussion with the Keltons about his work that they thought was defective, which was followed by an exchange of letters." The Creditors did not attach any of the letters to their Objection.

## III. DISCUSSION

Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "The decision to reopen should be made on a case-by-case basis based on the particular circumstances and equities of a case, and should be left to the sole discretion of bankruptcy court." Diaz-Nieves v. Irizarry (In re Irizarry), No. 06:10-bk-188876-KSJ, 2012 WL 592886 at *1 (Bankr. M.D. Fla. Feb. 17, 2012)(footnote omitted). *See also* Mass. Dept. of Revenue v. Crocker (In re Crocker), 362 B.R. 49, 53 (B.A.P. 1st Cir. 2007) (citing In re McGuire, 299 B.R. 53, 55 (Bankr. D. R. I. 2003)). The moving party bears the burden of demonstrating sufficient cause to reopen. As the First Circuit stated in Colonial Sur. Co. v. Weizman,

> It is true that an unnotified creditor is not entirely helpless even after the bankruptcy proceeding is long over: the discovery of overlooked assets and the opportunity to prove fraud can be grounds for reopening the bankruptcy. But so, too, can a debtor move to reopen to list a debt where the failure to give notice was innocent and can be shown to have caused no harm; consistent with

---

has: (1) brought a court or arbitration proceeding; (2) obtained a judgment or arbitration award; and (3) exhausted all customary and reasonable efforts to collect the judgment or award."

The homeowner must file a claim with the guaranty fund within six months of obtaining a judgment or arbitration award. Mass. Gen. Laws ch. 142A, § 7.

Stark [In re Stark, 717 F.2d 322 (7th Cir.1983)], we conclude that in such a case the debtor would be entitled to such relief. Yet the burden of doing so is fairly upon the debtor who failed to give notice—or so Congress seems to have thought.

564 F.3d at 532. *See also* Rodney v. Arias (In re Arias), 469 B.R. 133 (Bankr. D. Mass. 2012)

(citing In re Corbett, 425 B.R. 51, 53 (Bankr. D. N. H. 2010)). In Corbett, the court required the

debtor to submit a verified motion or an affidavit in support of reopening a case because

"[d]ebtors cannot simply recite a generic explanation that the omission was innocent without

some further factual detail" and that explanation "can probably be countered by anything that

makes it inequitable to grant such relief." 425 B.R. at 53 (citing Weizman, 564 F.3d at 532).

> Courts generally consider a number of factors in determining whether to reopen a case:
>
> the length of time that the case was closed . . .; whether a nonbankruptcy forum, such as state court, has the ability to determine the issue sought to be posed by the debtor . . .; whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post bankruptcy, of the parties; whether any parties would be prejudiced were the case reopened or not reopened; the extent of the benefit which the debtor seeks to achieve by reopening; and whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened.

In re Crocker, 362 B.R. at 53 (citations omitted). The court in Crocker observed that courts

have exercised their discretion not to reopen a bankruptcy case where there was a pending

case in a non-bankruptcy forum with jurisdiction to hear the dispute. Id. at 53-54 (citing Otto,

311 B.R. 43, 47 (Bankr. E.D. Pa. 2004); In re Tinsley, 98 B.R. 791 (Bankr. S.D. Ohio 1989); In re

E.A. Adams, Inc., 29 B.R. 227 (Bankr. D. R.I. 1983); In re Hepburn, 27 B.R. 135 (Bankr. E.D.N.Y.

1983)). Notably, the Superior Court has concurrent jurisdiction with this court to determine

the dischargeability of debts. Several circuit courts have observed that "courts have

7

interpreted 28 U.S.C. § 1334(b) as granting concurrent jurisdiction to state courts to determine the nondischargeability of debts." Hamilton v. Hamilton (In re Hamilton), 540 F.3d 367, 373 (6th Cir. 2008). *See also* Eden v. Robert A. Chapski, Ltd., 405 F.3d 582, 586 (7th Cir. 2005) (explaining that "state courts have concurrent jurisdiction with the bankruptcy courts to determine whether or not a debt is dischargeable in bankruptcy").

In their respective filings with the Court, neither the Debtor nor the Creditors focused on the Superior Court's determination that the Creditors' claims were not discharged based upon its consideration of the Weizman standard. Accordingly, this Court concludes that the Debtor, in essence, is seeking reconsideration of the Superior Court's decision, in reliance on Weizman, that the Creditors' claims were not discharged. It is evident to this Court that the Superior Court carefully reviewed the decision of the First Circuit in Weizman and determined that the Debtor failed to satisfy his burden, particularly where the First Circuit observed:

> Nothing in the language or history of the 1978 revision of section 523(a)(3) indicates that Congress aimed to carve out no asset bankruptcies from what we perceive to be a general rule that listing the creditor is a condition of discharge. The qualifying phrase about timely filing recognizes that notice may be given late in the bankruptcy-proceeding day but still in time for the creditor to participate in the bankruptcy proceeding. Here, the bankruptcy proceeding was completed with no notice to Colonial.

> That the debtor claims to have no distributable assets might make one think that the creditor is not harmed by the lack of notice and so the Ninth Circuit reading is just a shortcut to a no harm, no foul outcome. But no asset claims are easy to make; a creditor might want notice precisely to argue that there are assets even though the debtor asserts otherwise.

564 F.3d at 532.

As a result of the Superior Court's determination that certain of the Keltons' breach of

contract claims have not been discharged, two issues arise: 1) What effect should be accorded the Superior Court's determination of nondischargeability in light of the Keltons' statement that they do not intend to assert claims under 11 U.S.C. § 523(c)?[3] and 2) If this Court were to review the Superior Court's determination, whether it should conclude that the Debtor established both that his omission of the Keltons' claims was innocent and the absence of "anything that makes it inequitable to grant such relief"? Weizman, 564 F.3d at 532. *See also* In re Mammola, No. 90-12851-JNF, 2009 WL 4938202 (Bankr. D. Mass. Dec. 14, 2009).

---

[3] Section 523(c)(1) provides:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1). Section 523(a)(3)(B) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> > (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--  . . .
> >
> > > (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request . . . .

11 U.S.C. § 523(a)(3)(B).

The Superior Court's order was not final.  Therefore, neither collateral estoppel, *see*

Trenwick Am. Reins. Corp. v. Swasey (In re Swasey), 488 B.R. 22, 33 (Bankr. D. Mass. 2013)

(collateral estoppel under Massachusetts law requires final judgment on the merits), nor the

Rooker-Feldman doctrine, *see* Field v. Hughes-Birch (In re Hughes-Birch), 499 B.R. 134, 149

(Bankr. D. Mass. 2013); In re Balser, No. 10-17292-JNF, 2013 WL 4409187 (Bankr. D. Mass. July

23, 2013,[4] apply to preclude reconsideration of whether the Debtor satisfied the Weizman

---

[4] In Balser, this Court observed:

The Rooker–Feldman doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). It "strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions." In re Sanders, 408 B.R. 25, 33 (Bankr. E.D.N.Y. 2009) (citing Book v. Mortgage Elec. Registration Systems, 608 F.Supp.2d 277, 288 (D. Conn. 2009), and Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005)). *See, e.g.,* New Eng. Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61 (1st Cir. 2002); Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 403 (B.A.P. 1st Cir. 2004); Xytest Corp. v. Mitchell (In re Mitchell), 255 B.R. 97, 106 (Bankr. D. Mass. 2000). "Courts in the First Circuit interpreting the doctrine have held that it forecloses lower federal court jurisdiction where the issues in the case are 'inextricably intertwined' with questions previously adjudicated by a state court." In re Schwartz, 409 B.R. at 247 (citations omitted). "A federal claim is 'inextricably intertwined' with state court claims 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.' " Id. (quoting Sheehan v. Marr, 207 F.3d 35, 40 (1st Cir. 2000), and citing Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir.1999)). Thus, the doctrine "precludes a federal action if the relief requested in the federal action 'would effectively reverse the state court decision or void its holding.'" Schwartz, 409 B.R. at 247 (citations omitted).

Balser, 2013 WL 4409187 at *7 (footnote omitted).

standard.

Based upon the existing record, the Court concludes that there is a factual issue as to whether the Debtor's failure to list the Creditors was innocent. With respect to the equities, the Court concludes that undisputed facts establish that the Keltons were prejudiced by the lack of notice of the Debtor's Chapter 7 case and the Debtor's subsequent conduct after the filing of the Newton District Court action. They did not have the opportunity to explore whether the Debtor's Chapter 7 case was legitimately a "no asset" case, and they did not have an opportunity to assert exceptions to discharge under 11 U.S.C. § 523(a) prior to the expiration of the applicable statute of limitations with respect to their claims under Mass. Gen. Laws ch. 142A, § 17. When the Keltons commenced their action against the Debtor in the Newton District Court, they afforded him an opportunity to move to reopen his bankruptcy case at that time. The Debtor did not do so, electing to make the argument he now makes in this Court to the Superior Court first. He lost, yet now he seeks relief from this Court after causing the Keltons to incur needless additional legal fees. The expense associated with the commencement of the Superior Court case in which the Debtor raised his discharge as a defense and lost caused prejudice to the Keltons.

The Keltons, however, have expressly stated that they do not intend to seek a determination as to the dischargeability of any debt which the Debtor may owe them in the event that the case were to be reopened. Their sole goal, and one that they are unlikely to attain, is to obtain reimbursement from the Fund. Accordingly, were this Court to deny the Debtor's Motion, it would, in effect, sanction the nondischargeability of a debt that would

otherwise be dischargeable under 11 U.S.C. § 523(a)(3)(A).[5]

Thus, the Court finds that resolution of the Motion to Reopen turns on the question of whether the Debtor's failure to list the Creditors was "innocent" and the equities of the case. The Debtor maintained that because he had not heard from the Creditors between April 18, 2008 and July 29, 2010, his failure to list them was innocent.  The Keltons, however, maintained that the termination of the Debtor as their contractor was acrimonious and he should have been aware of their potential claims.  Because the Debtor did not file a verified Motion to Reopen or an affidavit in support of his motion, his assertion that his omission of the Creditors was innocent is not dispositive of the issue and the Keltons established prejudice.  Accordingly, the Court concludes, as did the Superior Court, that the Debtor failed to satisfy his burden under Weizman.  In addition, the Debtor waited approximately 33 months after his case was closed and approximately ten months after the Keltons dismissed the Newton District Court complaint to move to reopen.  Although advised to move to reopen

---

[5] Section 523(a)(3)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

(3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing . . . .

11 U.S.C. § 523(a)(3)(A).

his bankruptcy case by the Keltons, he gambled that the Superior Court, a court with

concurrent jurisdiction, would dismiss the Keltons' complaint in its entirety based upon his

bankruptcy discharge, causing prejudice to the Keltons.  *See* <u>In re Crocker</u>, 362 B.R. at 53.

**IV. CONCLUSION**

       In view of the foregoing, the Court shall enter an order denying the Motion to Reopen.

       By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  March 7, 2014